DONNA BEELER, Plaintiff-Appellee, v. CHEM-LAWN CORPORATION, Defendant-Appellant.

First District (1st Division) No. 1—88—1288

Opinion filed May 15, 1989.

Brinton & Bollinger, of Chicago (Howard T. Brinton and Timothy I. McArdle, of counsel), for appellant.

Kane, Obbish & Propes, of Chicago (Lorna E. Propes and Karen A. Kerbis, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a directed verdict in favor of the plaintiff, Donna Beeler. The issues presented on appeal are: (1) whether the trial court erred in directing a verdict in favor of the plaintiff on the issue of defendant's negligence, and (2) whether the trial court erred in directing a verdict in favor of the plaintiff on the issue of plaintiff's contributory negligence. We reverse and remand.

This appeal arises out of a suit to recover for personal injuries incurred as a result of a collision between a truck driven by an employee of Chem-Lawn Corporation (Chem-Lawn) and a bicycle ridden by Donna Beeler. At the time of the collision, plaintiff was travelling in the far right-hand lane of U.S. 14 eastbound on or near the exit ramp onto Route 68. The collision took place somewhere near the exit ramp but the exact location was in dispute.

Plaintiff testified that her bicycle was properly equipped and she was aware that the vehicle code applied to bicycles. She also testified that while she generally rode to the right of the white line, she had no memory of this accident. The driver of the Chem-Lawn truck, Mr. Hardy, testified that his truck was in good working order, including the brakes and turn signals, and that his truck had an operating speed governor which limited the vehicle's speed to 55 miles per hour.

Hardy stated that prior to the collision, he was following five to six car lengths behind a van. As they approached the exit ramp to Route 68, both vehicles signaled an intention to exit. The driver testified that the van braked a little past the mouth of the ramp and then suddenly swerved off the exit ramp and back onto the highway. He stated that he then saw the plaintiff for the first time and that she was between the middle lane and right-hand side of the lane in the middle of the exit ramp. Defendant testified that at that time, he was on the exit ramp lane and had reduced his speed preparatory to exiting but was unable to react quickly enough to avoid the collision. He stated that he braked hard and turned the vehicle sharply, which caused the truck to tip over on the right-hand side of the exit ramp.

Richard Adams, testifying for the plaintiff, stated that on the day of the accident he was travelling in the opposite direction on Route 14. He testified that both the van and the truck were in the right-hand lane and the bicycle was crossing the Route 68 ramp at the time of the accident. He stated that he saw the van swerve suddenly but that he never actually saw the Chem-Lawn truck hit the bicycle. He further testified that at the time of the accident he was approximately 250 feet from the ramp and that he did not notice the speed of the vehicles prior to the accident.

Paul Halverson, the driver of an automobile travelling behind defendant's truck at the time of the occurrence, testified that he first observed defendant's truck when it passed him about one-half mile before the exit ramp. He testified that in his opinion, the truck had been exceeding the speed limit but later testified that he could not tell if the truck reduced or increased speed as it neared the exit ramp.

Prior to the impact, Halverson was unable to see the plaintiff or her bicycle. At trial, using a photograph, he indicated that at the moment of impact, defendant's truck was in the right-hand lane, rather than on the exit ramp. Halverson also testified that he found plaintiff's body at the point where the exit ramp joins the highway.

Illinois State trooper Sergeant James Jamison arrived at the scene after the accident and conducted an investigation. He testified that he observed 102 feet of skid marks, the majority in the right-hand lane and the remainder curving up the exit ramp and off into a ditch. He also testified that he found a gouge or scuff mark on Route 14 in the far right lane at the point where the exit ramp and the highway join and that he believed the mark designated the point of impact.

At the close of the evidence, plaintiff moved for a directed verdict which the trial court denied on the basis that it was precluded by questions of fact. Plaintiff renewed the motion, and the trial court then sustained plaintiff's motions for directed verdicts that plaintiff was not contributorily negligent and that defendant was negligent as a matter of law. The jury was instructed that a directed verdict had been entered and that the only issue before them was damages. Damages were assessed in the amount of $313,302.63, and defendant now brings this appeal.

Defendant first contends that the trial court erred in directing a verdict in favor of the plaintiff on the issue of defendant's negligence. Defendant maintains that the evidence presented during the trial and all reasonable inferences therefrom were such that reasonable persons could differ as to their interpretation and the jury could have reasonably found in favor of the defendant and against the plaintiff. We agree.

Although the facts in this case clearly could support a jury verdict in favor of the plaintiff, the issue before us is not whether there is sufficient evidence to support plaintiff's case but whether defendant Chem-Lawn presented sufficient evidence to support a verdict in its favor.

■■ *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, requires that verdicts are to be directed

"only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." When faced with a motion for a directed verdict, it is not within the province of the trial court to assess the credibility of witnesses or to decide which facts are more probably true than others. (*Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 777, 504 N.E.2d 927; *Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 208-09, 462 N.E.2d 753.) Where the evidence demonstrates a factual dispute, or where resolution of conflicting evidence may determine the outcome, it is error for the trial court to direct a verdict, as it is the function of the jury to decide whether the defendant exercised due care under the circumstances. See, *e.g.*, *Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 509-10, 492 N.E.2d 1364.

■■ ■ Under Illinois law, the occurrence of an automobile accident, even under circumstances where the plaintiff has exercised ordinary care, does not of itself raise any presumption of negligence on the part of the defendant. (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 147, 479 N.E.2d 976.) Moreover, a rear-end collision does not automatically create an inference as a matter of law that the driver of the rear vehicle was negligent or that he was following too closely or driving too fast for conditions. It is the responsibility of the trier of fact, in this case the jury, to determine whether the rear driver in such accidents was acting reasonably under the circumstances or that the accident was unavoidable. (*Thomas*, 134 Ill. App. 3d at 147.) Even under circumstances where a defendant has collided with the rear of a stationary vehicle, Illinois case law requires the issue of that defendant's liability to be decided by the finder of fact. See, *e.g.*, *Marynczak v. D & L Transport Co.* (1981), 94 Ill. App. 3d 381, 388-89, 418 N.E.2d 972.

In the present case, there were numerous evidentiary disputes at trial and the disputes were material to the liability or nonliability of Chem-Lawn.

The driver of the Chem-Lawn truck, Mr. Hardy, testified that just prior to the accident he was travelling no faster than 55 miles per hour, as his vehicle was controlled by a speed governor. Hardy stated that he was following about five to six car lengths behind a van, and that as he and the van approached the exit ramp, both signalled an intention to exit. Hardy testified that the van applied its brakes after it passed the mouth of the exit ramp and he also applied his brakes. He further stated that the van suddenly swerved to the left, off the exit ramp and across the median strip which separated the ramp from

U.S. 14. It was at this point, according to Hardy's testimony, that he first observed plaintiff's bicycle directly in front of him in the center of the exit ramp.

Hardy explained that when he first saw the plaintiff, he had passed the point where the two lanes diverge and his vehicle was on the exit ramp. In order to avoid striking plaintiff's bicycle, he turned sharply, which resulted in his truck tipping over into a ditch on the right-hand side of the exit ramp.

Chem-Lawn concedes that the testimony of witness Paul Halverson and investigating officer Jamison conflicts with that of defendant's agent, Mr. Hardy. Halverson expressed the opinion that Hardy was speeding approximately 1½ miles west of the scene of the accident and that he did not know if Hardy had reduced his speed prior to the incident. Halverson admitted that he had not seen the plaintiff prior to the impact. When he saw the plaintiff in the air, defendant was in the right-hand lane of U.S. 14 and his vehicle was not turned sideways.

State Trooper Jamison testified to the presence of 120 feet of skid marks and a gouge in the roadway which in his opinion represented the point of impact. The gouge was at the beginning of the exit ramp and next to the right-hand lane of U.S. 14.

Based on Mr. Hardy's testimony, the jury could have found that he was operating his vehicle within the speed limit, was keeping a proper lookout, was following the vehicle in front of him at a safe distance and had acted as a reasonably prudent person would have acted under those circumstances to avoid this accident.

Although both Mr. Hardy and Officer Jamison placed the point of impact on the exit ramp, the trial court made a finding that the defendant's agent struck the plaintiff on the shoulder of U.S. 14 and not on the exit ramp. The court also made a finding that defendant's agent failed to keep a proper interval between his vehicle and the vehicle ahead of him and that he was travelling too fast for conditions on the roadway. The trial court's findings were made despite the fact that there was conflicting testimony as to the point of impact, the speed of travel and the exercise of due care of both parties.

It is improper to direct a verdict when there are factual disputes which require the assessment of witness credibility or election between conflicting evidence. (See *Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 272, 512 N.E.2d 105.) Under such circumstances, the *Pedrick* rule requires deference to the jury's primary role as trier of fact. (*Haas v. Tomaszek* (1978), 56 Ill. App. 3d 656, 659, 371 N.E.2d 1240.) Applying this standard to the facts here, we cannot conclude that a

verdict in favor of the defendant could not stand, and therefore, we find that the trial court erred in granting plaintiff's motion for a directed verdict on the issue of defendant's negligence.

■■ Defendant also contends that the trial court erred in finding that plaintiff was not guilty of contributory negligence as a matter of law. Based on the evidence presented at trial, we agree that the issue of plaintiff's contributory negligence was a question that should have been decided by the jury. *Haas v. Tomaszek* (1978), 56 Ill. App. 3d 656, 659, 371 N.E.2d 1240.

The plaintiff testified that she had no recollection of the occurrence at all. The only direct evidence of the collision between plaintiff and defendant was the testimony of defendant's agent, Mr. Hardy. Hardy testified that when the van in front of him swerved from the exit ramp back onto the highway, he was faced with plaintiff travelling on a bicycle in the center of the exit ramp. If the jury chose to believe Mr. Hardy, they could properly have found plaintiff guilty of contributory negligence.

■■ ■ In addition, irrespective of any statutory violations, the question of the plaintiff's due care was an issue of fact that should have gone to the jury, as plaintiff had a duty to operate her bicycle with ordinary care for her own safety. (See *Martino v. Leiva* (1985), 133 Ill. App. 3d 1006, 1008, 479 N.E.2d 955; *Moran v. Aken* (1981), 93 Ill. App. 3d 774, 777, 417 N.E.2d 846.) A plaintiff is guilty of contributory negligence when she fails to exercise that degree of care which a reasonably prudent person would have used for her own safety under like circumstances, and which failure is the proximate cause of her injury. *Moran v. Aken* (1981), 93 Ill. App. 3d 774, 777, 417 N.E.2d 846.

From the evidence presented here, we believe the jury could have found that plaintiff failed to exercise due care in crossing an exit ramp from a high speed highway and was therefore contributorily negligent. Accordingly, we find that the trial court erred also in directing a verdict in favor of the plaintiff on the issue of contributory negligence.

For the above reasons, the judgment of the trial court is reversed and this cause is remanded for a new trial.

Judgment reversed and remanded.

MANNING, P.J., and QUINLAN, J., concur.