VERONICA JARKA, Ex'r of the Estate of Robert J. Jarka, Deceased, Plaintiff-Appellee, v. YELLOW CAB COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1977

Opinion filed June 28, 1994.

Jesmer & Harris and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant.

Rothschild, Barry & Myers, of Chicago, for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

This is an appeal from a money judgment, entered on a jury verdict in favor of plaintiff Veronica Jarka, executor of the estate of Robert J. Jarka, deceased, against defendant Yellow Cab Company. The judgment is for damages sustained by plaintiff as the result of defendant's negligent infliction of emotional distress. Defendant contends that the trial court erred (1) by permitting plaintiff to file an amended complaint at trial; and (2) by entering judgment for plaintiff in the absence of proof of negligence. Plaintiff cross-appeals, contending that the trial court erred by permitting the issue of decedent's comparative negligence to be presented to the jury. We affirm the judgment of the trial court in that the trial court properly exercised its discretion by permitting plaintiff to file an amended complaint at trial, plaintiff did in fact prove the negligent infliction of emotional distress and the issue of decedent's comparative negligence was properly submitted to the jury.

On November 26, 1984, Veronica Jarka and her husband, decedent Robert J. Jarka, flew into O'Hare Airport. They intended to take a cab from the airport to their final destination. Because of decedent's heart condition, Mrs. Jarka carried, in addition to a purse, their 27-inch piece of luggage and a carry-on bag. Decedent carried nothing but his top coat.

As they were walking towards a cab line, a yellow cab pulled up alongside of the Jarkas and the cabdriver motioned for them to enter the cab. Decedent opened the door and Mrs. Jarka put the carry-on bag on the seat and pulled the luggage into the cab onto the hump. Mrs. Jarka was partially seated in the back seat, pulling the luggage in, when the cabdriver turned around and told her to get out and started cursing at her. He shook his fist at her and used foul language. He kept telling her to get out and that she was not getting out fast enough. Mrs. Jarka threw her purse and bag on the sidewalk, and as she was pulling her luggage out, the cabdriver gave it a shove. The luggage got hooked onto the handle of the door and was torn. Decedent tried to move the luggage and told the cabdriver to watch his tongue because a lady was present. After decedent got the luggage

out, as Mrs. Jarka was half in and half out of the cab, the cab started to move and decedent grabbed Mrs. Jarka's hand. Mrs. Jarka reached down to get her purse and the cab pulled away. Decedent's legs staggered and as he fell backwards, his head struck the pavement and began to bleed. Decedent was transported to Resurrection Hospital, where he was pronounced dead.

At the time of the incident, cabs in the terminal areas of the airport were required to receive tickets from a central dispatch area. A dispatcher sent them from the central area to the various receiving areas as needed. The cabdriver who picked up the Jarkas had circumvented the system and had no authority to take the Jarkas as passengers. As Mrs. Jarka and decedent were entering the yellow cab, dispatchers Steve Kirshenbaum and Dale Diliberto approached the cab.

Kirshenbaum testified that he had words with the cabdriver about the ticket and the cabdriver got out of the cab arguing. The cabdriver swore and yelled at him. When the cabdriver got out of the cab, the cab lurched forward a foot or two. Kirshenbaum yelled at the cabdriver to get back into the cab and stop it because there were customers near the cab. The rear door was open and Kirshenbaum could see decedent across the cab. Decedent was pulling the suitcase out when he raised an index finger in the air, got a very strange look and fell back on the sidewalk. The cab left at that point and Kirshenbaum told Diliberto to call an ambulance. Kirshenbaum and Diliberto both testified that they did not believe that the cab struck decedent.

Dr. Mitra Kalelkar, the deputy medical examiner for Cook County who performed the autopsy on decedent, testified that decedent's heart was markedly enlarged and decedent had severe coronary artery disease and diffuse subcardiac fibrosis. Dr. Kalelkar saw no evidence of external trauma to decedent's stomach, but she saw evidence of trauma to his head. Decedent had either one or two heart attacks substantially before the fatal arrhythmia. Dr. Kalelkar explained that decedent developed an arrhythmia, in which his heart fluttered so quickly that it failed to pump blood, and that arrhythmia caused his death. In Dr. Kalelkar's opinion, decedent's arteriosclerotic cardiovascular disease, which was a natural cause of death, led to his fatal arrhythmia. Decedent's death certificate listed arteriosclerotic cardiovascular disease as the cause of death.

Dr. Richard F. Kehoe testified that, in his opinion, the incident with the yellow cab caused decedent's death. He testified that decedent had a "constellation of cardiac findings" and any significant additional stress could have precipitated the fatal cardiac arrhythmia.

By stipulation of the parties, the discovery deposition of Dr. David Wilber was read into evidence as an evidence deposition. At his deposition, Dr. Wilber testified that he had a file on the case and had written a summary letter on July 14, 1989. Since the report, his opinions had not changed. He agreed with Dr. Kehoe's statement that the events at O'Hare Airport played a role in precipitating decedent's cardiac arrhythmia. However, he felt that any number of life stresses could have produced similar kinds of events. He believed that the events described by Mrs. Jarka were the final push in precipitating the fatal arrhythmia. In his opinion, any sort of significant exertion, such as carrying his suitcase up a couple of escalators or flights of stairs would have been sufficient to cause the onset of the attack. Dr. Wilber stated that he was surprised that a man with decedent's medical history went on a long trip. The incident at the airport could have produced a flow of adrenaline which would sensitize the heart to develop arrhythmias. Dr. Wilber believed that if decedent had not taken that cab, he would not have experienced the fatal arrhythmia at that time.

The jury returned a verdict in favor of plaintiff finding that her damages totalled $139,000. The jury found decedent to be 10% negligent and reduced the amount of recoverable damages to $125,100. Pursuant to special interrogatories, the jury found that the cab in question was owned and operated by Yellow Cab Company of Chicago, and found that decedent had not been struck by the door of the cab.

Defendant initially contends that the trial court erred by permitting plaintiff to file an amended complaint on the day of trial. Plaintiff's original complaint, alleging that decedent died as the result of injuries sustained when he was struck by a yellow cab, was both a wrongful death action and a survival action. The amended complaint contained additional allegations of negligent entrustment, improper solicitation and the negligent infliction of emotional distress. The amended complaint alleged that decedent died as the result of injuries sustained from being struck by a yellow cab or, alternatively, that he died as the result of injuries sustained from the negligent infliction of emotional distress. Specifically, defendant argues that the amended complaint altered both the nature and the quality of proof required in defense of the original complaint. Defendant's argument is that it was prejudiced and that plaintiff failed to offer a good reason for the failure to file the amended complaint prior to trial.

●1 It is within the sound discretion of the trial court to permit an amendment to a pleading any time before final judgment. Generally

the trial court's decision will not be disturbed absent an abuse of discretion. The test of whether that discretion has been properly exercised is whether the amendment furthers the ends of justice. (*DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681, 491 N.E.2d 13.) Factors to be considered in this decision include whether surprise or prejudice to the nonpleading party would result from the amendment. (*Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 451, 501 N.E.2d 830.) When facts sought to be alleged on the eve of or during trial are known to the party at the time of original pleading and no good reason is offered for their not having been filed at that time, leave to amend is properly denied. (*Carlisle v. Harp* (1990), 200 Ill. App. 3d 908, 915, 558 N.E.2d 318.) This is particularly true where the amendment would alter the nature and quality of proof required to defend. *Lake County Forest Preserve District v. Frecska* (1980), 85 Ill. App. 3d 610, 617, 407 N.E.2d 137.

The notion that decedent was struck by the yellow cab is fostered only by the observations of Mrs. Jarka. At trial she testified that the door of the yellow cab "glanced" across decedent's stomach. Hence, the initial theory of plaintiff's case was that decedent was struck by the yellow cab. This observation was contradicted by eyewitnesses and the objective medical findings and opinions of all the doctors who testified. It is understandable that under the emotional circumstances of the incident, Mrs. Jarka may not have achieved absolute detached reflection.

In a report dated October 31, 1988, plaintiff's expert, Dr. Kehoe, indicated that decedent was not struck by the cab door, but the incident did lead to his heart failure. A copy of this report was furnished to defendant. In September 1990 defendant deposed Dr. Kehoe. In October 1990 defendant's expert, Dr. Wilber, was deposed by defendant. Dr. Wilber's deposition indicated that the incident with the cab was the "final push" in precipitating decedent's fatal cardiac arrest.

●2 The original complaint alleged that after inviting plaintiff and decedent to be passengers in the cab, the cabdriver refused to take them to their destination, swore at them, ordered them out of the cab and threw their baggage to the pavement. Notwithstanding plaintiff's failure to file an amended complaint prior to April 1991, the nature of the claim for emotional distress was obvious and should have been known to defendant at the time Dr. Kehoe's report of October 31, 1988, was received. Defendant deposed Dr. Kehoe in September 1990 and its own expert, Dr. Wilber, in October 1990. Both experts opined that decedent was not struck by the cab door and that the incident led to decedent's heart failure or was the final push. These factors

pointed indisputably in the direction of emotional distress as a cause of action.

We note that defendant requested neither a continuance nor an opportunity to conduct further discovery when plaintiff filed the amended complaint. To deny plaintiff an opportunity to assert a claim for emotional distress is tantamount to denying plaintiff the right to pursue relief flowing from decedent's death. The trial court properly exercised its discretion in favor of allowing an amended complaint when doing so furthered the ends of justice. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281, 193 N.E.2d 833.) We find no abuse of discretion by the trial court in permitting the filing of the amended complaint at the time of trial.

●3 Defendant next contends that the trial court erred when it entered judgment for plaintiff on the jury's verdict. It is defendant's position that plaintiff did not prove a claim for the negligent infliction of emotional distress in that assuming decedent to be a direct victim, plaintiff must show that decedent suffered emotional distress and either a contemporaneous physical injury or a contemporaneous physical impact. Noting that the jury in a special interrogatory found that the decedent was not struck by the cab door (thus no contemporaneous impact), defendant argues that there was no evidence of a contemporaneous physical injury.

The requirement that a direct victim incur a contemporaneous impact or suffer a contemporaneous physical injury is in the disjunctive. Only one or the other is required, not both. Defendant's contention that plaintiff did not establish that decedent sustained a contemporaneous physical injury belies the commonsense meaning of the record. The trial court instructed the jury to return a verdict in favor of plaintiff if the jury found all of the following: Defendant was negligent; decedent was endangered by defendant's negligence; defendant's negligence was the proximate cause of decedent's death and decedent suffered physical injury and death from emotional distress caused by defendant's negligence. Pursuant to this instruction, the jury returned a verdict in favor of plaintiff.

Notwithstanding the jury's finding that decedent suffered a physical injury and death, defendant argues that plaintiff failed to establish a physical injury. Implied in defendant's theory of the case is the notion that a search of the record would reveal that there is no evidence that decedent suffered a physical injury. To the contrary, there is ample evidence in the record that decedent suffered a physical injury. Those factors responding to decedent's besieged heart constitute a physical injury resulting in decedent's death. There is controverted testimony as to whether the cause of death was inflicted

emotional distress or a natural cause. Dr. Kehoe, plaintiff's expert, and Dr. Wilber, defendant's expert, respectively testified that the incident with the cabdriver caused or precipitated decedent's death. A contrary opinion was offered by Dr. Kalelkar, who performed an autopsy. Dr. Kalelkar concluded that decedent died from arteriosclerotic cardiovascular disease, which was a natural cause of death.

Findings of fact by the trier of fact will not be disturbed unless they are against the manifest weight of the evidence. (*Greater Peoria Sanitary & Sewage Disposal District v. Hermann* (1987), 153 Ill. App. 3d 398, 402, 505 N.E.2d 769.) In *Sohaey v. Van Cura* (1992), 240 Ill. App. 3d 266, 276, 607 N.E.2d 253, *aff'd* (1994), 158 Ill. 2d 375, the court stated:

> "A jury verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the findings of the jury are unreasonable, arbitrary, and not based on the evidence. [Citation.] A jury verdict will only be reversed when the evidence, viewed most favorably to the prevailing party, nevertheless so overwhelmingly favors the appellant that no contrary verdict could ever stand. [Citation.] In a jury trial, it is the function of the jury, not an appellate court, to determine both the disputed and undisputed facts of the case and to draw from those facts the reasonable inferences they support. [Citation.] An appellate court may not set aside a jury verdict merely because the jury could have drawn different inferences and conclusions."

Here we find that the jury verdict, relative to a physical injury, was supported by reasonable inferences and conclusions drawn from the evidence.

We note that after the judgment in the case at bar, our supreme court in *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 309-12, 574 N.E.2d 602, held that there is no requirement that a direct victim allege a physical injury or illness. Accordingly, direct victims of negligently inflicted emotional distress are now on the same footing as intentional victims of emotional distress and may recover for mental anguish unaccompanied by physical manifestations of injury.

●4 Defendant next contends that plaintiff did not sustain the requirement for recovery for negligent infliction of emotional distress as a bystander. Defendant's argument is that as a bystander, plaintiff must prove that decedent was endangered and suffered a physical injury or illness. We have already found that plaintiff proved that decedent suffered a physical injury. We find no validity in defendant's contention that the cabdriver's altercation was restricted to Mrs. Jarka and did not endanger decedent.

It is possible for a person to be both a direct victim and a by-

stander. (*Hayes v. Illinois Power Co.* (1992), 225 Ill. App. 3d 819, 825, 587 N.E.2d 559.) Mrs. Jarka testified that as she was seated in the cab, the cabdriver ordered her out, yelled obscenities, and attempted to push her luggage out of the cab. Decedent abandoned his intention to enter the cab and attempted to help Mrs. Jarka to extricate herself from the cab. There is evidence that the cab actually lurched forward near decedent as the cabdriver got out of the cab swearing and yelling at the starter. It was reasonable for decedent to fear for his own safety as the result of the cabdriver's conduct towards Mrs. Jarka. Decedent's efforts to rescue Mrs. Jarka involved risk to himself. A bystander who is in the zone of physical danger and who, because of defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1.) The decedent was in the zone of physical danger and the evidence supports a reasonable inference that decedent feared for his safety and that he was endangered as the result of defendant's negligent conduct.

Defendant argues that the cabdriver's conduct was not sufficiently outrageous to support the verdict. Liability for emotional distress does not extend to mere insult, annoyances, petty oppression or trivialities. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765.

●5 The trial court, during the instruction conference, considered the conduct of the cabdriver in this case to be outrageous. The trial court said:

> "[O]ne version of the evidence here that I've heard and looked at the way the jury might view it is this elderly lady is threatened right in front of her husband. I mean \*\*\* that's an outrageous thing to do to somebody \*\*\*. [The cabdriver] threatened, \*\*\* with a fist[,] an elderly lady like this. I mean, that's just really outrageous if the jury believes that now.
>
> Just think about it. I mean, you're talking here about a woman in her 60's, and [the cabdriver was] shaking his fist at her [and] swearing at her."

We adopt the view of the trial court and find that under the facts and circumstances of this case the cabdriver's conduct was outrageous.

●6 Plaintiff contends in her cross-appeal that the trial court erred in permitting the issue of decedent's comparative negligence to be submitted to the jury. Defendant's theory of contributory negligence is that decedent, aware of his heart condition and the accompanying physical handicap, negligently attempted to remove and carry

luggage and proximately caused his own death. Defendant's theory of decedent's contributory negligence, albeit contradicted by some of the evidence, is supported by the record for the purpose of submitting this issue to the jury. The decedent had a long history of significant heart problems and had been released from a hospital only eight or nine days before his death. Prior to the incident with the cabdriver, Mrs. Jarka handled the luggage because of decedent's heart condition. During the incident, decedent attempted to remove the luggage from the cab and pick it up from the ground. Dr. Wilber testified that decedent's struggle with the luggage was an additional burden that "could have played a role in [decedent's] heart attack."

A litigant is entitled to have the jury instructed on the issues presented, the legal principles to be applied and the facts that must be proved to support a verdict. An instruction is justified if it is supported by some evidence in the record. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085.) Since, in the present case, there was some evidence to support defendant's theory of decedent's negligence, it was proper to submit the issue to the jury.

We are mindful that, during the incident, decedent became enmeshed in an incident totally precipitated by the cabdriver's outrageous conduct and decedent suffered emotional distress in a situation that demanded an immediate response without time for sober reflection. Nevertheless, decedent was required to exercise that degree of care that a reasonably prudent person would use for his own safety under like circumstances. (*Beeler v. Chem-Lawn Corp.* (1989), 183 Ill. App. 3d 648, 654, 539 N.E.2d 290.) A jury's finding on the issue of comparative negligence will not be set aside on review absent a finding that the verdict is against the manifest weight of the evidence. (*Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 955, 576 N.E.2d 1195.) There is no issue raised as to the manifest weight of the evidence of the finding that decedent was contributorily negligent.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.