ACME BRICK COMPANY *v.* HAMILTON.

HAMILTON *v.* BRALEI HOMES.

4-9447                                                  238 S. W. 2d 658

Opinion delivered April 16, 1951.

Rehearing denied May 7, 1951.

*Sherrill, Gentry & Bonner,* for appellant.

*W. S. Miller, Jr.,* and *Martin K. Fulk,* for appellee.

GRIFFIN SMITH, Chief Justice. Orville E. Hamilton and his wife contracted with Bralei Homes, Inc., for the construction of a brick-veneered home for $10,254. All materials and work were to be provided by Bralei, but the prospective homeowners were given the right to designate the brick type, with particular reference to color. Acme Brick Company, of Malvern, maintains a showroom in Little Rock. The Hamiltons were informed that they should make the selection and convey their preference to the contractor for inclusion in the written agreement. Brick displays, including four color shades, were arranged for convenient inspection in Acme's showroom, with assigned numbers or labels.

The Hamiltons alleged in their suit against Bralei and Acme that Nos. 743 to 746M were selected, but were not supplied; nor did the color of the bricks that were delivered to Bralei correspond with those shown in the display panel. The discrepancy was not discovered until the walls had been finished and cleaned by removing surplus mortar, etc. When the vice was observed and Bralei declined to make satisfactory adjustments, suit was filed. The complaint alleged that it would cost $1,381 to remove the off-color veneer and replace it with brick the contract called for. It was estimated that in other respects the construction as a whole was $3,653 short of completion. A temporary impasse resulted and work was stopped. Damages based on rentals at $50 per month paid by the Hamiltons were alleged, to which was added interest charged on money borrowed to pay the contractor. Bralei entered a denial and also cross-complained against Acme.

Acme's defenses were multiple. (a) The Hamiltons failed to notify the company that a mistake had been made; (b) after inspection of the walls in their incompleted form the color variations should have been discovered, therefore the mistake was waived; (c) the bricks

delivered, in respect of color, were substantially like the samples upon which the order was based, and (d) there was no privity of contract between Acme and the Hamiltons. In its cross-complaint Acme contended that Bralei knew, or ought to have known, that the error had been made, hence as between Acme and Bralei the latter had waived any right to recover. Specifically it was urged that a printed form, used by Acme as an invoice in lieu of delivery tickets, contained a provision for prompt inspection and notification of error on penalty of waiver.

The decree gave the Hamiltons $1,300 to compensate removal and replacement of the veneer, and interest and rental costs aggregating $201.27—a total of $1,501.27 adjudged against Acme. Bralei, on its cross-complaint, was given judgment for $157.71 against Acme. The Hamilton complaint against Bralei and Acme's cross-complaint were dismissed. Acme appealed here, as did the Hamiltons.

*First—Relationship Between the Parties.*—Acme contends that the Hamiltons were merely incidental beneficiaries of its contract with Bralei and therefore have no cause of action. One of the most recent cases dealing with rights of a third party beneficiary was decided on January 10th of this year by the Maryland Court of Appeals, *Marlboro Shirt Co.* v. *American Dist. Tel. Co.,* 77 Atl. 2d 776. The three kinds of third party beneficiaries are discussed — donee, creditor, and incidental. Marlborough Shirt Co. sued American District Telegraph Company. The Shirt Company had leased part of a building owned by Rosenbloom. After the Shirt Company's occupancy began Rosenbloom contracted with the Telegraph Company to install and maintain as part of an existing sprinkler system an automatic signaling device designed to register in the Telegraph Company's office any leakage that might occur. A substantial leak developed and the signal service failed to function, with consequential damage to goods stored by the Shirt Company. The trial court sustained a demurrer to the complaint and the order of dismissal was upheld on appeal.

In the opinion written by Judge GRAYSON the question was stated in this way: Was the demurrer properly sustained where the facts alleged showed negligence on the part of [the Telegraph Company] and where the facts further show that the contract in question of necessity had to be for the benefit of [the Shirt Company?] The Telegraph Company's contention was that the contract was not intended to benefit the Shirt Company. The Maryland decisions, said Judge GRAYSON, have receded from the common law rigidity requiring privity of contract before an action can be maintained, even though the contract is for the benefit of a third party: . . . "[The old rule] has gradually relaxed, so that now, in this state, a person for whose benefit a contract is made can maintain an action upon it. But before one can do so it must be shown that the contract was intended for his benefit; and, in order for a third party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise." See Restatement, Contracts, § 133. (Acme has cited § 147 of the Restatement.)

A hypothetical relationship where a cause of action does not lie is given by the Maryland court: "If A enters into a contract with B and [B?] does not know that A intends C to be the beneficiary under the contract, C cannot enforce the promise made by A, for it would not appear that A and B recognized C as the primary party in interest and as privy to the promise. . . . [But] there are cases where the name of the beneficiary is not stated, but where he can recover under the contract. In such cases the facts and circumstances surrounding the transaction show clearly that a particular person (though not named) is the beneficiary. Williston on Contracts, Revised Ed., vol. 2, § 378."

When tested by these rules did Acme owe to the Hamiltons a duty of more than incidental importance?

The Brick Company admits that it did not supply Bralei from stock corresponding with the identifying numbers displayed. Nor is it denied that the Hamiltons

were told that better results would be obtained if they inspected houses where the identical colors represented by numbers 743 to 746M had been used. Bralei had built extensively and is a substantial Acme patron; but, according to the Hamiltons, they had a right to select from stocks offered by Acme or the Hope Brick Company. An Acme salesman, in furtherance of an obvious purpose to procure the order—and also being anxious to extend any reasonable accommodation that might prove helpful—mentioned three houses where the bricks had been used.

Orville E. Hamilton testified that the Acme office manager urged him and Mrs. Hamilton to inspect the houses mentioned—"He insisted that we go to these sites to help us in deciding which brick we wanted". The manager explained that the office samples would not look exactly like a finished wall would appear, hence the importance of viewing a completed house. The manager for Acme, with commendable forthrightness, admitted error in writing the order after the selection had been made from the inspections referred to and from samples. It appears conclusive, therefore, that at a time when the Hamiltons had a right under their contract with Bralei to designate either Acme or Hope Brick Company products, they were urged into a course of moderate inconvenience in consequence of which Acme hoped to procure the order. In these circumstances the benefits flowing to Acme were substantial, and reliance by the third party was more than incidental. The Hamiltons had a subsisting and material concern in the result of these solicited inspections, and Acme at all times knew that the result of any selection made would become an integral of the contract it had with Bralei for the benefit of these prospective homeowners.

The argument that Acme, without obligating itself to Bralei's contractees, could induce the homeowners to select its brick and forego the right to look elsewhere, and then in the face of admitted error evade responsibility by relying upon the strict letter of its agreement with Bralei,—this construction omits consideration of the incentive for most business transactions: the profit stimulus. It does not answer Acme's permissible purpose

to best competition, and it obscures the business factor and contractual equation whereby Bralei sent the Hamiltons to Acme for the furtherance of an end intended to be beneficial from three standpoints.

We have said that where a promise is made to one party upon a sufficient consideration for the benefit of another, the beneficiary may sue the promissor for a breach of the promise. *Green* v. *Whitney,* 215 Ark. 257, 220 S. W. 2d 119. The opinion goes on to say that while court decisions are not in complete harmony as to certain limitations where the right to sue has been upheld, the principle has been consistently recognized.

An interesting discussion of third party rights is a part of the opinion of Mr. Justice Baker, *Freer* v. *J. G. Putman Funeral Home, Inc.,* 195 Ark. 307, 111 S. W. 2d 463. A paragraph from pp. 311-12 of the Arkansas Reports (South Western Reporter pp. 465-6) is shown in the margin.[1]

After holding that in appropriate circumstances a third party beneficiary may sue, the *Freer* opinion says: ". . . We are not pioneering in making these announcements. We are following the modern trend as being one by which absolute justice may be had without doing violence to any substantial right."

*Second—Invoice Stipulations.*—While evidence preponderates that delivery tickets, as distinguished from invoices, were to be sent with each load of brick, it is conceded that invoices in multiple form were sent and that delivery was acknowledged by a Bralei employe.

---

[1] "We are confronted with the argument," said Judge BAKER, "that formerly the courts held that there must have been some privity or obligation as between Finney and the appellee in order to bind appellant; that none being shown here the appellee is without remedy. We find that formerly under some of the more ancient authorities that proposition might have been deemed as well considered. We prefer, however, to take a different view, which we think is more consonant with absolute justice, as well as in conformity with the contract. That view is supported by a substantial array of authorities to the effect that the more nearly absolute becomes the duty of the defendant to pay, in the same proportion is the power to sue increased. Here there is an absolute duty to pay. It admits of no denial and none is offered. There is the correspondingly increased right to sue."

748

At the bottom of these invoices appeared the matter shown in the footnote.[2]

The last sentence, "In no event shall this company be in any way liable after the material has been used", is relied upon by Acme. By reading the full marginal text it will be seen that contingencies primarily sought to be guarded against were "counts", "shortages", and "apparent shortages". These designations were followed by the statement that all materials would be considered accepted after reasonable time had been allowed the purchaser or his agent for inspection. There is grave doubt that the provision relied upon was intended to apply to a situation like the one presented here. Testimony on behalf of Bralei is that the disclaimer was not on the *purchase order* delivered to Acme and accepted by it as the basis of the buyer-seller relationship; that during a period of ten years no person with Bralei in a position of responsibility had noticed the relatively obscure print, and that receipt of the brick was acknowledged by an employe miscellaneously engaged. The so-called invoices were not sent to Bralei's office. The effect of a workman's signature could not, therefore, have the effect of creating a new contractual obligation relieving Acme of negligence no one suspected would be involved. Bralei had a right to assume that Acme would deliver the commodity ordered and we find nothing to justify interposition of the abstract sentence renouncing liability in all cases where use had been made of the thing ordered, and where the error, as here, was not of a character reasonably discernible.

*Third—Cross-Complaints, etc.* — Bralei's primary liability to the Hamiltons includes all consequential damages not tied to physical replacement of the veneer; but

[2] A condition of this sale is that our yard count shall govern settlement. Count your material before it is unloaded if possible, otherwise while it is being unloaded or immediately afterwards. If there is an apparent shortage call us, by wire if we have no local representative, and we will come and settle shortage before any of the material is used, with the understanding that you will pay the expenses if our yard count is correct. No shortage claim will be recognized under any other circumstances. All material shall be considered accepted after the purchaser or his agent has had reasonable opportunity for its inspection. In no event shall this company be in any way liable after the material has been used.

as to such replacement both Acme and Bralei are accountable. Acme's manager testified that an estimate of $1,300 or $1,318 for this work "sounded about right", although the company's charge for the brick was slightly less than $400 and the complaint as to color was not made until approximately fifty days after delivery. The Hamiltons had been on the premises two or three times while the work was under way. Mrs. Hamilton testified that the veneering was near the ground-floor windows—probably four or five feet high—when a casual inspection was made for the purpose of noting structural progress, but scaffolding obstructed the view to a certain extent and the off-shade bricks were not noticed.

When the Hamiltons complained to Bralei work was stopped, but later a written agreement was entered into in consequence of which all work was accepted except the veneer. It was this delay that occasioned damage to the Hamiltons in excess of replacement cost of the brick structure. It is not shown that Acme was a party to the work-stoppage or that it contributed to the interim delay in any manner. The damage caused by Acme's error was as great the day the veneering was finished as it was two, three, or four months later.

The judgments must be affirmed in part and reversed in part. Since the Hamiltons had a cause of action against Bralei *and* Acme, the order relieving Bralei will be reversed. Upon remand judgment should be rendered against Bralei and Acme in favor of the Hamiltons for $1,300. On Bralei's cross-complaint against Acme it should have judgment for $1,300. The Hamiltons should have judgment against Bralei (in addition to the item of $1,300) for $201.27. It is so ordered.

GEORGE ROSE SMITH, J., not participating.