**Jin Ok CHOI and Won Hye Choi, Plaintiffs,**

v.

**CHASE MANHATTAN MORTGAGE CO., Transamerica Real Estate Tax Service, Inc., and Bank of America, FSB, Defendants.**

No. 98 C 577.

United States District Court,
N.D. Illinois,
Eastern Division.

March 2, 1999.

Order Denying Reconsideration,
June 29, 1999.

Philip T. Reinstein, Reinstein & Sherman, Northbrook, IL, for plaintiffs.

Leann Pedersen Pope, Cynthia M. Storer, Burke, Warren,MacKay & Serritella, P.C., for Chase Manhattan Mortg. Corp., defendant.

Ludwig Edward Kolman, James Vincent Garvey, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Transamerica Real Estate Tax Service, Inc., defendant.

Robert Eliot Shapiro, David Gordon, Jonathan Stephen Polich, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, Kenneth E. Wile, Chicago, IL, for Bank of America, FSB, defendant.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiffs Jin Ok Choi and Won Hye Choi (the Chois) seek to recover damages for economic and emotional injuries resulting from the sale of their home for unpaid taxes. The Chois allege that defendants breached contractual duties (counts I–III) and committed various torts (counts IV–VI) when they provided erroneous tax information, failed to pay the real estate taxes owed on the property, and failed to effectuate a redemption while there was still time. In count VII, the Chois request a declaratory judgment regarding the appropriate allocation of an award from the Cook County Indemnity Fund. We have before us defendants' motions to dismiss: Chase moves to dismiss counts I, IV and VII; Transamerica moves to dismiss count VI[1]; and Bank of America moves to dismiss counts III and V.[2] In deciding a motion to dismiss we assume the truth of plaintiffs' well-pleaded facts and draw all reasonable inferences therefrom. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Defendants have a high burden to meet and the complaint will only be dismissed if it is clear that plaintiffs can prove no set of facts entitling them to relief. *Hi–Lite Prods. Co. v. American Home Prods. Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993). For the following reasons, defendants' motions are granted in part and denied in part.

### Background

There are three contracts at issue here. The first is the underlying mortgage instrument (mortgage) entered into by the Chois and Margaretten & Company (Margaretten) on February 3, 1992, providing Margaretten a security interest in the Chois' Wilmette property. Margaretten subsequently became Chemical Residential Mortgage Corporation (Chemical) and is now Chase Manhattan Mortgage Corporation (Chase). The mortgage contract required the Chois to make monthly pay-

---

1. Transamerica has answered count II and asserted as an affirmative defense that plaintiffs have failed to state a claim.

2. Following receipt of BofA's first motion to dismiss counts III and V, filed March 6, 1998, plaintiffs requested and received leave to file an amended complaint. They filed the new complaint on April 16, 1998, substituting new claims for the original counts IV, V and VI. Thus, we decide today Bank of America's first motion to dismiss count III and its second motion, filed May 14, 1998, to dismiss count V.

ments which included a sum paid into an escrow account to cover applicable real estate taxes (mortgage at ¶ 2). Chase and its predecessors were obligated under the contract to pay out of the escrow account all real estate taxes due and payable (mortgage at ¶¶ 2–3). The second contract (service contract), dated February 3, 1992, was between Margaretten and Transamerica Real Estate Tax Service (Transamerica), under which Transamerica agreed to provide information and services to facilitate the lender's tax payment obligations. Plaintiffs allege that Transamerica provided Margaretten with erroneous information as to the correct parcel of land. As a result, the second tax installment of 1991 and the first installments on the 1992 and 1993 taxes were not paid. The complaint avers that the Chois were third-party beneficiaries under the service contract. (count II at ¶ 11).

The third contract, dated July 19, 1994, is the "Interim Sub–Servicing Agreement" (interim agreement)[3] between Bank of America (BofA) and Margaretten under which BofA agreed to service and administer certain loans, including the plaintiffs' mortgage. Again, the Chois aver that they are third-party beneficiaries under the interim agreement (count III at ¶ 15). Pursuant to the agreement, BofA collected the plaintiffs' monthly mortgage payments, including those sums directed to the escrow account, and was obligated to pay the "real estate taxes in accordance with all

applicable laws, agency requirements and investor requirements" (count III at ¶ 14).

As a result of defendants' alleged failures to rectify the delinquent tax obligations and paperwork errors, the taxes were sold by the county to a tax purchaser, Phoenix Bond and Indemnity Company, Inc. (Phoenix) on or about February 4, 1993 (count III at ¶ 12). In June or July 1995, the plaintiffs informed BofA they had received a notice indicating the real estate had been sold in a tax sale and the redemption period would expire on October 17, 1995. The plaintiffs charge that BofA breached its obligation under the interim agreement to effectuate a redemption during this period. Although BofA apparently attempted to redeem the taxes, it was ultimately unsuccessful. (am.cplt. at ¶ 13). The chain of events leading to the loss of the Chois' home was soon completed. On December 26, 1995, Phoenix obtained a tax deed to the real estate, and on January 8, 1996, Phoenix filed the deed with the Cook County Recorder of Deeds.

Plaintiffs further aver that there is a grace period in Illinois during which they could have filed a petition to set aside the tax deed after it was issued in December. Under section 22–45 of the Property Tax Code, a party may petition the court to have a tax deed voided if the order for the deed was effectuated pursuant to a negligent error by a county employee during the period of redemption.[4] In its reply

---

**3.** The complaint expressly refers to the interim agreement but does not attach it as an exhibit. Under such circumstances the defendant is entitled to include the document as an exhibit to its motion and that document is treated as part of the complaint for the purposes of that motion. *See Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *Marks v. CDW Computer Centers, Inc.,* 901 F.Supp. 1302, 1309 (N.D.Ill.1995).

**4.** 35 ILCS 200/22–45 provides:

In cases of the sale of homestead property in counties with 3,000,000 or more inhabitants, a tax deed may also be voided by the court upon petition, filed not more than 3 months after an order for tax deed was en-

tered, if the court finds that the property was owner occupied on the expiration date of the period of redemption and that the order for deed was effectuated pursuant to a negligent or willful error made by an employee of the county clerk or county collector during the period of redemption from the sale that was reasonably relied upon to the detriment of any person having a redeemable interest. In such a case, the tax purchaser shall be entitled to the original amount required to redeem the property plus interest from the sale as of the last date of redemption together with costs actually expended subsequent to the expiration of the period of redemption and reasonable attorney's fees, all of which shall be dispensed from the fund created by Section 21–295.

memorandum, at 8–9, BofA acknowledges that "BofA actually did redeem the property, but Cook County lost the check." Plaintiffs allege that Chase and BofA "withheld knowledge of the alleged attempted redemption" until April 22, 1996 (count IV at ¶ 15; count V at ¶ 30), thereby depriving them of an opportunity to make valid objections to the entry of the order for issuance of the tax deed. According to the Chois, had BofA diligently pursued its fiduciary duties, exhausting all potential remedies and keeping the Chois informed of any progress, plaintiffs could have recovered their house from Phoenix.

As a result of losing their family home the Chois have suffered economic damages, including moving expenses, rent for housing, damage to their credit, loss of the use of their equity, an increased cost of financing, and the value of their property above the amount of the outstanding mortgage. Beyond the economic damages, plaintiffs also charge that defendants' negligent behavior caused emotional distress and other personal injuries, including sleeplessness, an inability to work, disruption of the family's religious activities and an interruption in the children's education. (counts IV, V, and VI).

There is a final chapter that is particularly relevant to count VII. Pursuant to § 21–305 of the Property Tax Code, codified at 35 ILCS 200/21–305, the Chois filed a claim against the County Treasurer of Cook County, Illinois (Treasurer), as trustee of a fund (the indemnity fund) created to reimburse those who have unjustly lost their homes as a result of tax sales. The Treasurer, in turn, filed a third-party complaint against Chase, alleging that Chase had failed to timely pay the property taxes owed on the property as required by the mortgage.[5] After a full hearing on the merits of the Chois' claim, the court found that although the Chois were barred from bringing an action to recover the property itself, they were entitled to just compensation for their loss. A judgment was entered on July 2, 1997, against the indemnity fund in the amount of $244,000, the fair cash value of the Chois' home at the time the deed was transferred, plus interest and court costs. The Treasurer was ordered, however, to deduct $125,520.85 (the amount of the existing lien against the property in favor of Chase) and to pay that amount jointly to Chase and Jin Ok Choi and Won Hye Choi "unless the respondent is provided with a release of lien." Plaintiffs subsequently filed this action in state court, # 96L16591, on December 30, 1997, asking the court to determine how that $125,520.85 reserve should be allocated between Chase and the plaintiffs and seeking to recover additional damages from all three defendants. On January 29, 1998, BofA, with the agreement of all defendants, removed this action to federal court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[6] Resolution of the Treasurer's third-party complaint against Chase was deferred by the state judge and is pending in state court.

*Analysis*

a. *Contract and Declaratory Judgment Claims Against Chase*

■ Chase first argues that the entire complaint must be dismissed under Feder-

---

**5.** The statute creating the County Treasurer's Indemnity Fund, 35 ILCS 200/21–305(b) (1994), provides "[t]hat the County Treasurer, as Trustee of the indemnity fund, shall be subrogated to all parties in whose favor judgment may be rendered against him or her, and by third-party complaint may bring in as a defendant a person...who is or may be liable to him or her, as subrogee, for all or part of the petitioner's claims against him or her."

**6.** According to the notice of removal, at 2, BofA is a federally-chartered savings bank with its principal place of business in San Francisco, California. Chase is a New Jersey corporation with its principal place of business in New Jersey. Transamerica is a division of Transamerica Corporation, a Delaware corporation with its principal place of business in California. At all times relevant to this action plaintiffs were residents of Illinois or New York.

al Rule of Civil Procedure 12(b)(7) because plaintiffs have failed to join a necessary party pursuant to Federal Rule 19 (Chase mem. in sup. at 3). According to Chase, because the Chois first pursued recovery through the indemnity fund, "plaintiffs no longer have any claims against [Chase] because the Treasurer is now subrogated to those claims." (Chase reply at 4). Defendant bases this argument on the language of 35 ILCS 200/21–305(b), which requires that the Treasurer be subrogated to the petitioners "for all or part of the petitioner's claims against him or her." Chase provides no support, however, for its counter-intuitive position that by creating a means to equitably compensate the victims of a tax sale, the Illinois legislature actually intended to strip the victims of all subsequent rights to complete compensation. Clearly, the language was intended (a) to provide a procedure to reimburse the indemnity fund for monies paid to victims, and (b) to ensure that the legally responsible party does not have to pay twice for the same item. Our conclusion is bolstered by the prayer for relief in the Treasurer's third-party complaint which asks that the state court "find the Third Party Defendant liable for any damages awarded to Petitioners from the Indemnity Fund." Moreover, the Chois do not dispute that the Treasurer is subrogated to their rights against defendants up to the amount paid out of the indemnity fund. In this diversity suit [7] we are considering whether the Chois are entitled to damages *above and beyond* the $118,479.15 they have al-

ready received and whether they are consequently entitled to keep any or all of the $125,520.85 award issued jointly to the Chois and Chase Manhattan.[8]

■ Resolving issues of compulsory joinder and dismissal for failure to join an indispensable party typically involves a three-step process. *Iron Workers Local Union No. 17 Ins. Fund and its Trustees v. Philip Morris Inc.*, 182 F.R.D. 512, 516 (N.D.Ohio 1998). The court must first determine whether the absent party is "necessary." If the party is, in fact, a "person to be joined if feasible" as defined by the first section of Rule19(a), the court must then consider the implications of joinder— e.g., whether diversity jurisdiction will be destroyed if the party is joined—under the second section of Rule 19(a). *Id.* If joinder is not feasible, the court must then decide whether that party is "indispensable" such that it would not be fair for the litigation to go forward in his absence. Fed. R.Civ.P. 19(b); *Iron Workers*, 182 F.R.D. at 517. Analysis under Rule 19 should not be formalistic, but rather should focus on pragmatic considerations and the factual and procedural posture of the individual case. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116 n. 12—117, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Chase argues that the Treasurer is a necessary party under Rule 19(a)(2)(i) because he claims an interest relating to the subject of the action and is so situated

---

7. Chase's veiled accusation (mem. at 3) that the Chois acted improperly when filing their amended complaint in federal court is misguided. It was defendants, of course, who chose to remove this suit out of state court, where it presumably would have been determined with the pending third-party complaint. Indeed, it is somewhat disingenuous for Chase to argue that plaintiffs cannot get relief on their contract claim because Chase has chosen to remove the case from state court, where clearly full relief could have been granted.

8. The parties vigorously disagree about why this second check was issued jointly. Though

we need not resolve that dispute here, we take judicial notice of the determination by the circuit court that it was beyond the court's jurisdiction to issue an award from the indemnity fund greater than the market value of the Chois' property at the time it was transferred (transcript at 8–9, appended to Chase reply at A). Because of this limitation the judge seemed to anticipate subsequent litigation over the additional damages (*id.* at 11). We mention this only because it appears to confirm that the state judge did not believe that 35 ILCS 200/21–305(b) eliminated the Chois' right to proceed directly against Chase.

that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest. (Chase memo in supp. at 4). We fail to see how this is true and Chase does not explain. Regardless of the outcome here, the Treasurer is still free to pursue his action for reimbursement in state court. And it is certainly the case that plaintiffs have every incentive to vigorously pursue a finding of defendants' liability. We acknowledge that judicial economy would undoubtedly be served by joining the Treasurer if he so desires, and we would happily entertain such a request pursuant to Federal Rules 21(b) and 24. We do not consider him a necessary party, however, and need not dismiss plaintiffs' case in his absence.

b. *Contract Claim Against Bank of America*

 In count III, plaintiffs charge that BofA failed to make the necessary tax payments when due and failed to effectuate a redemption in violation of its contractual duties under the interim agreement. BofA argues that the Chois have no standing to enforce the interim agreement because they were not a party to the contract (BofA mem, in sup. at 7–8). Plaintiffs respond that they were third-party beneficiaries and may therefore sue for damages arising out of BofA's breach. Whether a plaintiff is a third-party beneficiary of a contract is a legal conclusion that we need not accept for the purpose of a motion to dismiss. *See Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988).

 In Illinois, courts must look to the express language of the contract and the surrounding circumstances at the time the contract was executed to determine whether or not the contracting parties intended to benefit a third party directly. *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 178 N.E. 498 (1931); *F.W. Hempel & Co., Inc. v. Metal World, Inc.,* 721 F.2d 610 (7th Cir.1983) ("There is no question that the seminal and still vital Illinois au-

thority as to third-party beneficiaries is *Carson Pirie Scott & Co.*"). "A third party is a direct rather than an incidental beneficiary 'only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party.'" *Hempel,* 721 F.2d at 613. "If direct, he may sue on the contract, if incidental he has no right of recovery thereon." *Id., quoting Carson Pirie Scott,* 346 Ill. at 257, 178 N.E. 498.

 There is also a strong presumption in Illinois that contracting parties bargain and agree for themselves and only incidentally for third persons. *Waterford Condominium Ass'n v. Dunbar Corp.,* 104 Ill. App.3d 371, 60 Ill.Dec. 110, 432 N.E.2d 1009 (1982); *Hempel,* 721 F.2d at 613. To overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration. *155 Harbor Drive Condominium Ass'n, Inc. v. Harbor Point,* 209 Ill.App.3d 631, 647, 154 Ill.Dec. 365, 568 N.E.2d 365 (1991). BofA points to the express language of the interim agreement to show that it was only intended to benefit the parties to the contract. In particular, the defendant highlights § 15(g), which provides that "[t]his Interim Sub–Servicing Agreement shall be binding upon and inure to the benefit of the parties to this Interim Sub–Servicing Agreement and their respective successors and permitted assigns." Although this statement does not read "solely for the benefit of" or "exclusively to the benefit of," it does not even hint that the Chois and other borrowers were also intended beneficiaries. We also note that the dispute resolution procedures set forth in § 15(c) specify that "any controversy or claim between [BofA] and [Margaretten] arising out of or relating to this Interim Agreement. . . .will, at the request of any party be determined by arbitration." If BofA and Margaretten had in fact intended that mortgagors would have enforceable rights under the contract, it is unlikely that they would not have also directed

those claims into a dispute resolution framework.

Plaintiffs argue, however, that the substantive portions of the contract setting forth the "servicing activities and [ BofA ] obligations and covenants" are the best indication that the mortgagors were intended as direct beneficiaries. *See* section 6 of the interim agreement. Section 6(c), for example, provides that BofA shall "[k]eep a complete, accurate and separate account of and properly apply all sums collected by it from the Mortgagors on each Serviced Mortgage in accordance with Applicable Law..." Section 6(e) further requires that BofA shall "[f]rom the funds deposited in the Account, pay promptly to the proper parties, when and if due...taxes and all other disbursements required to be made under Applicable Law, Agency Requirements and Insurer Requirements and/or applicable mortgage loan documents." Plaintiffs argue that because (a) the real estate tax payments are the obligation of the plaintiffs, (b) the amount of those taxes was paid by the Chois directly to BofA, and (c) BofA is required to pay the taxes under § 6(c), we should conclude that "[t]he Plaintiffs/Chois' [sic] were the contemplated and INTENDED third-party beneficiary of this contract arrangement to collect the tax funds and pay the taxes" (plf's mem. in opp. at 6). Although we agree that the Chois would certainly have benefitted from BofA's responsible performance of these obligations, we cannot conclude that the

Chois were intended as "third-party beneficiaries" under the contract as that term is understood in contract law. *See Bescor, Inc. v. Chicago Title & Trust Co.*, 113 Ill.App.3d 65, 68 Ill.Dec. 812, 446 N.E.2d 1209 (1983) (finding that payee subcontractor, who was not a party to the construction loan escrow trust agreement, which expressly provided that it was not the intent of parties to the agreement to give any rights to other persons, partnerships, or corporations, was no more than mere incidental beneficiary of trust, in the absence of evidence that funds were entrusted for subcontractor's benefit); *Borough of Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73, 77, 11 A.2d 83, 85 (N.J.Err. & App.1940) (holding that municipality could not recover as a third-party beneficiary even though the contract required payment of property taxes and "there can be no doubt that the Borough, specifically named in the contract, would benefit by the payment of the municipal liens which were charged against the properties in question"); *Ball Corp. v. Bohlin Bldg. Corp.*, 187 Ill.App.3d 175, 178, 134 Ill.Dec. 823, 543 N.E.2d 106, 108 (1989) (confirming that contract controls third-party status and finding that contractor and subcontractor intended contract to impose obligations and benefits solely between the parties).

Plaintiffs provide no evidence to suggest that Margaretten and BofA, at the time of contracting, intended any other result,[9] nor do they provide any case law reaching a

---

9. The complaint includes the fact that BofA provided the Chois with a "customer service telephone number for direct communication by Plaintiffs to and with B of A" (count V, ¶ 28). Though they do not argue the point in their briefs, we assume that this was included to show that BofA believed it had an obligation to directly serve the Chois. In *Hempel*, 721 F.2d at 614, a buyer of scrap metal claimed third-party beneficiary status under a contract between the seller and its assayer. The buyer pointed to the fact that the assayer had directly communicated the results of the content analysis to the buyer, that the assayer's content report included the buyer's name, and that the assayer's agent indicated on the

weight certificate that the material was weighed "for [the buyer]." Even so, the Seventh Circuit concluded that there was insufficient evidence to find that the original oral agreement was intended to benefit a class of which the buyer was a member. *Id.; see also Braten v. Bankers Trust Co.*, 60 N.Y.S.2d 155, 468 N.Y.S.2d 861, 456 N.E.2d 802, 806 (1983) (holding that lender's agreement to extend credit to failing business did not create third-party rights in business suppliers, even if lender directly communicated arrangement to suppliers, and suppliers relied on agreement to "gear up" their facilities to continue to supply business).

different conclusion.[10] Thus, we must return to the principles established by *Carson Pirie Scott:* "The rule is that the right of a third party benefitted by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability." 346 Ill. at 258, 178 N.E. 498. We must dismiss count III with prejudice to the extent that plaintiffs seek to exert third-party beneficiary status. As will be clear below, however, we are not fully convinced that plaintiffs cannot sue to enforce Transamerica's and BofA's obligations relating to the escrow account.

*c. Tort Claims Against Defendants*

■ The Chois contend that all three defendants owed them a duty to use reasonable care in the performance of their obligations relating to the real estate taxes (counts IV at ¶ 19, V at ¶ 30, VI at ¶ 18). They argue that defendants' negligent performance of these duties resulted in the sale of the taxes to Phoenix and, ultimately, a variety of economic and personal injuries to the family when their home was lost beyond recovery. Defendants argue that the economic loss doctrine prohibits recovery for any economic losses in tort because plaintiffs' suit is actually based on disappointed commercial expectations. All parties spend a good deal of time characterizing the source of the dispute, the nature of

the damages sought, and the implications of Illinois case law for plaintiffs' ability to state a claim in negligence. We believe the Illinois Supreme Court has done a good deal to clarify this muddy topic with its recent pronouncement in *Congregation of Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503 (1994). The court's reasoning in *Congregation* leads us to conclude that, at least for pleading purposes, the Chois have adequately alleged an extra-contractual fiduciary duty on the part of those entities responsible for managing the escrow fund.

The economic loss doctrine took root in Illinois when the Illinois Supreme Court decided *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), in which the plaintiff sought to recover the cost of repairing a defective grain storage tank. In affirming the dismissal of the strict liability tort claims the court determined that economic losses arising out of contractual disputes are more appropriately recovered under the law of sales as has been "carefully articulated" in the Uniform Commercial Code. *Id.* at 78, 61 Ill.Dec. 746, 435 N.E.2d 443. Since then, the doctrine has been extended beyond products liability to disputes arising in the real estate and service industries. In *Anderson Elec., Inc. v. Ledbetter Erection Corp.,* the court held that "a plaintiff seeking to recover purely economic losses stemming from frustrated commercial expectations cannot recover in tort, regardless of the plaintiff's inability

---

10. In *Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 913 (7th Cir. 1989), the court reviewed some of the circumstances which have led courts to conclude that a party was intended as a third-party beneficiary. "In some of these cases, the promisor specially designed its product for the third party's use, or discussed the selection of ·an appropriate product·with the third party." *See, e.g., Keel v. Titan Const. Corp.,* 639 P.2d 1228, 1231 (Okla.1981); *Acme Brick Co. v. Hamilton,* 218 Ark. 742, 238 S.W.2d 658, 660–61 (1951). In other cases, the contract negotiations revealed that the promisee

explicitly informed the promisor that it was entering the transaction "on behalf of," or "for the purpose of" benefitting, the third party. *See, e.g., Holbrook v. Pitt,* 643 F.2d 1261, 1271–73 (7th Cir.1981); *Mercado v. Mitchell,* 83 Wis.2d 17, 28–29, 264 N.W.2d 532, 538 (1978). In a third group of cases the contract itself established a comprehensive set of rights and obligations between the promisor and third party. *See, e.g., Sears, Roebuck & Co. v. Jardel Co.,* 421 F.2d 1048, 1054 (3d Cir.1970). None of those circumstances is present here.

to recover under an action in contract." 115 Ill.2d 146, 153, 104 Ill.Dec. 689, 503 N.E.2d 246, 249 (1986). *Moorman* and its progeny are still the law of Illinois and unless the Chois can fit into one of the exceptions to the doctrine they will be barred from recovering any economic losses in tort.

The exceptions, however, continue to expand. In *Collins v. Reynard*, 154 Ill.2d 48, 180 Ill.Dec. 672, 607 N.E.2d 1185 (1992), the Illinois Supreme Court held that a complaint against a lawyer for professional malpractice could be maintained in either contract or tort and that recovery could be sought in the alternative.[11] *Collins*, 154 Ill.2d at 50, 180 Ill.Dec. 672, 607 N.E.2d at 1186. The decision was based on the court's conclusion that an attorney's duty of competence exists "without regard to the terms of any contract of employment entered into by a lawyer and a client." Because this duty was extra-contractual, plaintiff could sue in tort for its breach without violating the strictures of the Moorman economic loss doctrine. "Contract law applies to voluntary obligations freely entered into between parties," the court explained. "Tort law, on the other hand, applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking. Tort obligations are general obligations that impose liability when a person negligently, carelessly or purposely causes injury to others." *Collins*, 154 Ill.2d at 51, 180 Ill. Dec. 672, 607 N.E.2d at 1186.

In *Congregation*, the Supreme Court extended this idea beyond *Collins'* narrow holding, suggesting that *Moorman* analysis should focus on the source of the duty owed to the plaintiff, rather than the nature of the damages sought. "The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his clients." *Congregation*, 159 Ill.2d at 162, 201 Ill.Dec. 71, 636 N.E.2d at 514. The court then concluded that accountants, like lawyers, have a duty to observe reasonable professional competence that exists independently of any contract. Thus, the investors could recover in tort for losses incurred when the accountant failed to accurately record the plaintiff's investments.

■■■■■ Did Chase, Bank of America, or Transamerica owe an extra-contractual duty to the Chois to exercise reasonable professional competence in the servicing of their escrow account and the payment of their tax obligations?[12] Generally, a lender is not considered a fiduciary of its borrower. *Stern v. Great Western Bank*, 959 F.Supp. 478, 487 (N.D.Ill.1997); *In re K Town, Inc.*, 171 B.R. 313 (Bankr.N.D.Ill. 1994). However, such a relationship may occur where one party, due to a close relationship, relies heavily on the judgment of another. *Stern*, 959 F.Supp. at 487; *Mid–America Nat'l Bank of Chicago v. First Sav. and Loan Ass'n of South Holland*, 161 Ill.App.3d 531, 537, 113 Ill. Dec. 367, 515 N.E.2d 176 (1976); *Hush v. Reaugh*, 23 F.Supp. 646, 651 (E.D.Ill.1938) ("There is no relation of trust and confidence between a debtor and his mortgagee, *except for the purpose of protecting the equity of redemption.*") (emphasis added); *Judd v. First Federal Sav. and Loan Ass'n of Indianapolis*, 710 F.2d 1237, 1241 (7th Cir.1983) (holding that mortgage contract did not create a trust requiring the mortgagee to account to the mortgagors as beneficiaries for any benefits the mortgagee may derive from use of the mortgagors'

---

**11.** It is worth noting here that the Federal Rules of Civil Procedure allow pleading in the alternative. Fed.R.Civ.P. 8(e)(2).

**12.** Whether a duty will be recognized under tort law depends upon the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Kirk v. Michael Reese Hosp. and Medical Center*, 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387 (Ill.1987); *Collins*, 154 Ill.2d at 51, 180 Ill.Dec. 672, 607 N.E.2d at 1186.

monthly prepayments for ground rents, taxes, special assessments, fire and other hazard insurance premiums; nor did it transform a traditional debtor-creditor relationship into a fiduciary relationship); *Kronisch v. Howard Sav. Inst.,* 161 N.J.Super. 592, 599–600, 392 A.2d 178, 181–182 (N.J.Super.A.D.1978) ("[T]he great majority of other jurisdictions that have considered similar claims have found that there is no trust relationship and that the parties are merely in a debtor-creditor relationship.... [T]he theme common to each is that the mere fact that a bank requires a mortgagor to tender advance tax payments and the bank thereupon covenants to pay such taxes is not sufficient to establish a trust relation between the bank and mortgagor.") (internal citations omitted).

▆▆ Others have held that mismanagement of an escrow may give rise to a cause of action for a breach of fiduciary duty.[13] *See, e.g., Poindexter v. Nat'l Mortgage Co.,* 1995 WL 242287, at *4 (N.D.Ill.) ("In estimating escrow requirements, good faith requires the mortgagee to exercise its discretion 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'"), citing *Resolution Trust Corp. v. Holtzman,* 248 Ill. App.3d 105, 112, 187 Ill.Dec. 827, 618 N.E.2d 418, 424 (1993); *Valenza v. Heine,* 1986 WL 15000, at *6 (E.D.Pa.) (finding that lender was trustee over escrow fund and that lender's late payment of school real estate taxes was a breach of its duties as "fiduciary-escrowee"), *judgment aff'd,* 831 F.2d 288 (3rd Cir.1987).

Our review of the case law satisfies us that plaintiffs have adequately pled the existence of defendants' duty to manage the escrow account and the accompanying tax obligations with professional competence and due care. Here in Illinois it may be that Chase's alleged breach of that duty is better analyzed according to the mortgage contract, where the duty of professional competence acts as an implied term, analogous to the way the duty of good faith and fair dealing is imputed as a term of the contract. *See Poindexter,* 1995 WL 242287, at 4. This approach would help reconcile the case law denying a mortgagee's fiduciary status with the Illinois Supreme Court's recent pronouncements on extra-contractual professional duties.

Where there is no contractual relationship between those responsible for the escrow account and the depositors, however, it cannot be the case that the duty to act competently with regard to the Chois' escrowed funds evaporates merely because *Moorman* tries to funnel commercial disputes into the UCC box. But what then is the nature of that duty? Illinois third-party beneficiary law does not provide the answer, as our earlier discussion indicates, but the law of assignment and delegation may be instructive. *See* Restatement (2d) of Contracts § 328 ("Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise."), *quoted in Pelz v. Streator Nat'l Bank,* 145 Ill.App.3d 946, 953, 99 Ill.Dec. 740, 496 N.E.2d 315, 320 (1986); *Kaplan v. Shure Bros. Inc.,* 153 F.3d 413, 418–419 (7th Cir.1998) ("Privity accompanies a valid assignment of a contract because it puts the assignee in the shoes of the assignor—since the assignor was in privity with the other contracting party, the assignee is as well."). Agency theory may be helpful. Ultimately, our rule must derive from the Supreme Court's instruction to determine whether the defendants owed a duty of competence and to whom. *See, e.g., First American Title Ins. Co. v.*

---

**13.** An escrow is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver it to the other party to the transaction.

*First Title Service Co. of the Florida Keys, Inc.*, 457 So.2d 467, 472 (Fla.1984) (finding exception to economic loss doctrine when abstracter knows that his employer or customer is ordering an abstract for use by a third-party purchaser of the property and holding that the known third-party user is owed the same duty and is entitled to the same remedy as the one who ordered the abstract).

It is noteworthy that in other contexts, escrow agents are held to owe a fiduciary duty to the depositors, not unlike the duty owed by a trustee to the beneficiaries of a trust fund.[14] *See Toro Petroleum Corp. v. Newell*, 33 Ill.App.3d 223, 228, 338 N.E.2d 491, 495 (1974) ("The relationship of escrowee to depositor has been characterized in various ways. The escrowee has been described as a 'trustee' for both the party making the deposit and the party for whose benefit it is made.... Like a trustee, the escrowee owes a fiduciary duty to act only according to the terms of the Escrow Instructions."); *Morelli v. California Pizza Kitchen, Inc.*, 1997 WL 162895 (N.D.Ill.) (recognizing valid claim under Illinois for breach of fiduciary duty owed by escrow agent to depositor).

Neither plaintiffs nor defendants provide much help in their briefs to clarify the perimeter of defendants' duties. Plaintiffs' theory of a universally-owed duty would nullify *Moorman* altogether.[15] Defendants Transamerica and BofA, on the other hand, would like us to ignore the fact that they had agreed to participate in the fulfillment of the Chois' *personal* tax obligations with the Chois' *personal* funds. All of this just convinces us that Judge Getzendanner was right when she postponed for later resolution under Rule 56 the question as to whether escrow duties under a construction contract ran to the subcontractor. *Heritage Ins. Co. of America v. First Nat. Bank of Cicero*, 629 F.Supp. 1412, 1418–1419 (N.D.Ill.1986); *see also Poindexter*, at *4–5, 13 (continuing question regarding mortgage assignee's duty to mortgagor to fairly estimate escrow payments for resolution under Rule 56(b)); *FDIC v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991) (permitting plaintiffs to simultaneously pursue a breach of contract theory as well as a breach of fiduciary duty theory because "[d]efendants owed their duty of care to [the FDIC] not solely as a result of any agreement into which they have entered, but rather by virtue of the position they held with [the bank]."). Defendants' motions to dismiss counts IV, V, and VI are denied to the extent that those counts represent claims of negligence and breach of fiduciary duty, but without any prejudice to a motion for summary judgment. Fed.R.Civ.P. 56.[16]

**14.** The interim agreement provides at ¶ 6(d) that BofA shall "deposit and maintain all funds received relative to the Serviced Mortgages in escrow accounts with Chemical Bank in accordance with all Applicable Law, Agency Requirements and Insurer Requirements. All funds shall be disbursed in accordance with Applicable Law, Agency Requirements and Insurer Requirements. Such Accounts shall be held by BAFSB *as trustee or custodian*, on behalf of MRG, FNMA, GNMA, FHLMC and/or the *Mortgagors*, as applicable and as their interests may appear. BAFSB shall maintain detailed records to show the respective interest of each individual Mortgagor in the Accounts. Each such Account shall be established and maintained in a manner which complies with the rules and regulations of the Federal Deposit Insurance Corporation" (emphasis added).

**15.** In fairness, plaintiffs rely heavily on *Ferentchak*, in which the Illinois Supreme Court found that any duty owed by an engineer to plaintiff homeowners was circumscribed by the terms of the engineer's contract with the land developer. *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 86 Ill.Dec. 443, 475 N.E.2d 822 (Ill.1985). Although their brief overstates the scope of defendants' duties (plfs' response to BofA at 8), plaintiffs appear to define BofA's and Transamerica's duties by reference to the terms of their contracts with Chase.

**16.** We are mindful, as well, that a determination of the issue may ultimately be irrelevant. If Transamerica and/or BofA caused Chase to breach its agreement with plaintiffs, Chase cannot escape liability because it delegated its responsibilities. Chase, however, is in privity

To the extent that those counts include claims of negligent or intentional infliction of emotional distress, however, plaintiffs' complaint is in more trouble. Defendants argue that plaintiffs failed to allege a contemporaneous physical injury or impact as required under Illinois law. Plaintiffs respond that recent court decisions eliminate the need for "direct victims" to show a physical injury. Though this is technically correct, plaintiffs' briefs do not accurately characterize the state of the law in Illinois. In *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991), the Supreme Court clarified that the *Rickey* "zone of physical danger" rule applies only to bystanders and not to direct victims. *Corgan*, 143 Ill.2d at 303, 158 Ill.Dec. 489, 574 N.E.2d 602; *and see Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 555, 75 Ill.Dec. 211, 215, 457 N.E.2d 1 (1983). The *Corgan* court went on to conclude that a sexual assault victim could maintain a cause of action for negligent infliction of emotional distress against her therapist even though she did not allege that she suffered a physical injury or illness as a result of her emotional distress. The court seemed to skip a step, however, when it did not discuss whether the plaintiff had to assert an original physical "impact," as had been required under earlier case law. Interpreting *Corgan*, the Seventh Circuit recently confirmed that the impact rule still applies in direct victim claims. *Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1382 (7th Cir.1993); *see also Buckley v. Jones Truck Lines, Inc.*, 778 F.Supp. 449, 451 (N.D.Ill.1991); *Kramer v. Melmedica Children's Healthcare, Inc.*, 1994 WL 722057, *3 (N.D.Ill.) ("Although the Illinois Supreme Court did do away with the requirement of pleading a resulting physical manifestation of injury, the court did not do away with the requirement of pleading a preceding physical impact or injury."). Therefore, for the Chois' negligent infliction of emotional distress claim to survive a motion to dismiss, they must have alleged some contemporaneous physical impact or injury. *Hirn v. Teledyne Continental Motors*, 1994 WL 685071, at *2 (N.D.Ill.) (holding that the failure to plead an impact or injury is fatal to the count).

Plaintiffs' briefs propose that the loss of their home had a significant "impact" on the family in that their "roots to the community [were] torn apart," the children's educational activities were disrupted, and their religious and business interests were "significantly affected" (plf's resp. to BofA at 7–8). But does losing one's home, *i.e.* being forced to move, constitute a "physical impact" such that this pleading requirement is met? Notwithstanding plaintiffs' corporeal description, we think it does not. Even a cursory review of the case law reveals that most negligent infliction cases deal with auto accidents, explosions, suffocation, electrocution, railroad collisions and other disasters. The bystander requirement, we note, focuses on the "zone of *danger*." In *Carlinville Nat'l Bank v. Rhoads*, 63 Ill.App.3d 502, 503, 20 Ill.Dec. 386, 380 N.E.2d 63, 65 (1978), the court described the impact rule as "where defendant's negligence inflicts an immediate physical injury, such as a broken leg." Even a woman who suffered from angina symptoms after being trapped in an elevator was held not to meet the physical impact requirement. *Lewis v. Westinghouse Electric Corp.*, 139 Ill.App.3d 634, 94 Ill.Dec. 194, 487 N.E.2d 1071 (1985). In his dissent, Judge Linn provided an important insight into how the courts have considered this very limited tort:

with both Transamerica and BofA, and Chase can recover its loss from whomever caused the loss by its failure to perform. This assumes, of course, that the defendants can be liable in tort only for consequential contract damages, but tort damages may include damages for emotional distress. That we leave for another day; the parties have not considered the issue and a brief review of the Illinois cases does not mandate a specific answer. This also assumes that none of the defendants can be liable for negligent or intentional infliction of emotional distress, which we decide hereafter.

The direct victim is the individual who is harmed as an immediate consequence of the accident itself; he is the person who sustains an injury as a result of being personally involved in the mishap. The direct victim, for example, is the driver of the car involved in a collision; the pedestrian hit by a passing vehicle; the product user in whose hands the product explodes, or, as in the present case, the person trapped inside the malfunctioning elevator. The direct victim, in other words, is an actual participant in the accident itself.

*Id.*, 139 Ill.App.3d at 639, 94 Ill.Dec. 194, 487 N.E.2d at 1074.

Clearly, the courts require some form of physical danger or harm as the catalyst for the resulting emotional trauma. We do not believe, on the other hand, that a traditional "accident" is required for a direct victim to recover under this tort theory. In *Burns v. Cineplex Odeon*, 1996 WL 501742, at *15 (N.D.Ill.), the court found that plaintiff experienced "a physical impact" based on his allegations that he was thrown to the ground, handcuffed, removed from a movie theater, searched, falsely imprisoned and arrested as a result of a malicious report to the police. In *Jarka v. Yellow Cab Co.*, 265 Ill.App.3d 366, 202 Ill.Dec. 360, 637 N.E.2d 1096 (1994), the court upheld the jury's conclusion that both plaintiffs suffered a "direct impact" when their cab driver ordered them out of the cab, pushed out their luggage, and then started moving while the woman was still extricating herself from the car. Both of these cases suggest that courts should broadly consider the kind of physical impact that will suffice.

Still, although the Chois were physically affected when they had to move their belongings into a new residence, they suffered no "physical injury or impact" as the Illinois courts have defined those terms.[17] Even legitimate physical symptoms of emotional distress cannot substitute for this element of the claim.[18] Counts IV, V, and VI are thus dismissed to the extent that they state a claim for negligent infliction of emotional distress. It goes without saying—and plaintiffs have conceded—that their complaint does not state a claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, we do not dismiss the case for failure to join an indispensable party, but order that the Cook County Treasurer be given notice of this decision as there are common questions of law and fact with his pending state action. We grant BofA's motions to dismiss count III because we find that the Chois were not intended as direct third-party beneficiaries under the interim agreement. We find that plaintiffs have failed to state a claim for negligent or intentional infliction of emotional distress and dismiss all claims to that effect with prejudice. To the extent that counts IV, V, and VI state a claim for negligence and breach of fiduciary duty, however, defendants' motions to dismiss are denied.

## MEMORANDUM AND ORDER

The Chois filed this action to recover damages for economic and emotional injuries caused when their home was sold for unpaid taxes. In our order of March 2, 1999, we declined to dismiss the Chois' tort

17. We note here that in this diversity action we are sitting as a surrogate state court. As such, we should be conservative in our interpretation of Illinois precedent and should avoid making new law on what is essentially an economic tort that did not involve a physical touching.

18. The Chois' brief collapses two separate inquiries into one. Under Illinois law plaintiffs must plead both a contemporaneous physical impact *and* severe emotional distress. Because of our conclusion on the first element we need not consider whether the Chois adequately pleaded emotional distress. *See McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill. Dec. 724, 533 N.E.2d 806, 809 (1988).

claims against defendants Chase Manhattan Mortgage Corporation (Chase), Transamerica Real Estate Tax Service, Inc. (Transamerica), and Bank of America, FSB (BofA). On April 7, 1999, we denied Chase's motion to "clarify" our order by dismissing the tort claim against Chase. We now consider an analogous motion to reconsider by BofA and Transamerica (defendants).

At issue is whether the Chois can recover in tort for consequential damages arising from defendants' alleged mismanagement of the mortgage escrow account, or whether the Chois' only recourse is through a breach of contract claim against Chase. To date we have not been presented with an Illinois case deciding these issues on closely analogous facts, nor have we been able to find any such case. As a federal court sitting in diversity we must therefore do our best to predict what the Illinois Supreme Court would do in these circumstances. There is one caveat, of course. When deciding a motion to dismiss we must apply the federal pleading rules and dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Jones v. General Electric Co.*, 87 F.3d 209, 211 (7th Cir.1996).

Defendants simply overstate our holding at this stage of the litigation. We have not created a new tort or declared a new generalized duty arising from participation in the management of an escrow account. Instead, we have simply pointed out that the nature of any duty owed to the Chois will be central to the resolution of plaintiffs' tort claims against Transamerica and BofA. For a variety of reasons we do not view that issue as cut-and-dried, as do the defendants. While we need not reiterate our earlier discussion, it may help to point out some of the reasons why these questions required further consideration on the merits.

First, a debtor-creditor relationship may be a fiduciary relationship, even if the general class of debtor-creditor relationships is not. *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir.1992), *citing Mid–America Nat'l Bank v. First Savings & Loan*, 161 Ill.App.3d 531, 538, 113 Ill.Dec. 367, 515 N.E.2d 176, 180 (1987). A party claiming the existence of a fiduciary duty where such a relationship does not exist as a matter of law (such as lawyer-client or principal-agent) must prove the existence of the relationship by clear and convincing evidence. *Pommier*, 967 F.2d at 1119, *citing Farmer City State Bank v. Guingrich*, 139 Ill.App.3d 416, 424, 94 Ill.Dec. 1, 487 N.E.2d 758, 764 (1985). In Illinois, the Chois would be required to plead these special facts, but in federal court they are only obligated to give a short and plain statement of the claim. Fed.R.Civ.P. 6. Thus for now, plaintiffs must merely allege the fiduciary relationship, not prove it.

Second, defendants' hyperbole does not change the fact that in some circumstances negligent performance of a contractual duty owed to A may also create liability in tort to B. *See, e.g., Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) (holding that surveyor could be liable to the homeowner for supplying inaccurate information, even though there was no contract between the homeowner and the defendant). Any number of other illustrations come to mind. A patient, for example, may have a cause of action against a laboratory that released information about his HIV status to the media, even though the lab's contract to test his blood was with the patient's HMO.

Third, the subset of tort claims preempted by the economic loss doctrine in Illinois is not particularly clear at the moment. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 89, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). The perimeter is particularly fuzzy when it comes to claims against defendants who provide professional financial services. *Rozny*, of course, created an

exception to *Moorman* for the tort of negligent misrepresentation where the defendant is in the business of supplying information and the plaintiff's reliance on the information was foreseeable. *Congregation of Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503 (1994), carved out another exception for certain professional malpractice claims because the intangible nature of the work-product would be difficult to capture in a contract term. Notwithstanding the rather complicated policy considerations behind these exceptions, cases following *Rozny* and *Congregation* often stop with a simple formalistic assessment: defendant securities dealer is "in the business of supplying information" because it is more like a termite inspector than a seller of crop sprayers; or, defendant insurance broker can be sued in tort consistent with *Congregation* because insurance advice is more like an attorney's counsel than an architectural blueprint. Certainly, a persuasive analogical argument could be made that defendants' professional escrow services are more like "wise counsel" than a blueprint because they require expertise and judgment to navigate the property tax bureaucracy. But the reasoning and text of the two cases directs us to look a little deeper and consider whether contract law is or was better suited to protect the Chois against this kind of loss.[1] Is there a need to impose or acknowledge an extracontractual duty owed directly from Transamerica and BofA to the plaintiffs?

Because there is no generalized duty in this context, we will need to examine the facts of this case. In considering whether a duty existed here, we must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant. *Gouge v. Central Illinois Public Service Co.*, 144 Ill.2d 535, 542, 163 Ill.Dec.

842, 582 N.E.2d 108, 112 (1991). In *Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24 (7th Cir.1989), the Seventh Circuit focused its attention on the foreseeability of the injury as the critical factor in determining whether consequential damages could be collected from a tortfeasor not in privity with the plaintiff. Judge Posner concluded that it would be unreasonable to impose liability unless the potential injurer had (or should have had) a rough idea of the extent of liability in the event of a careless accident. Consequently, where there was inadequate notice, a purchaser of a printing press could not collect lost profits from the subcontractor who damaged the machine while dismantling it for the seller. It was also important to the court that the buyer had had an opportunity to adequately protect himself against unforseen consequences when he contracted with the seller. Applying *Rardin*, Judge Reinhard concluded in *Woodard v. American Family Mut. Ins. Co.*, 950 F.Supp. 1382 (N.D.Ill.1997), that an independent laboratory retained by an insurance company to test materials for the purpose of determining the cause of the insured's loss did not owe a duty of reasonable care to the insured in collecting, handling and testing those materials or in reporting those tests to the insurer. And in *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951 (7th Cir.1982), cited by the court in *Rardin*, the Seventh Circuit held that the failure of a Swiss bank to properly handle a wire transfer requested by plaintiff's U.S. bank, with result that plaintiff lost the benefit of an advantageous ship charter, did not render the Swiss Bank liable in tort for the consequential damages. Like *Rardin*, *Evra* did not turn on whether it was a claim in contract or tort. Rather, the plaintiff was unable to collect consequential damages because the Swiss bank had no notice of the special circumstances giving rise to them.

---

1. It is also not obvious in which direction we should be conservative. *See Serfecz v. Jewel Food Stores, Inc.*, 1998 WL 142427, *4

(N.D.Ill.) (reading *Congregation* exception broadly because it is not for the federal district court to expand *Moorman*'s reach).

Each of these cases bears a close resemblance to ours in that it involves (1) privity between the plaintiff and a principal contractor, (2) temporary control over plaintiff's money or property by a third party subcontractor not in privity with the plaintiff, and (3) claims for consequential damages. We feel it was premature to decide whether or under what theory the Chois can collect "extra-contractual" damages simply on the basis of their federal complaint.

For these reasons, defendants' motion to reconsider is denied.